BLODGETT et al., Appellants,

v.

KAHN et al.; Lima Memorial Hospital, Appellee.

[Cite as *Blodgett v. Kahn* (1996), 113 Ohio App.3d 465.]

Court of Appeals of Ohio,
Third District, Hancock County.

No. 5-95-32.

Decided March 1, 1996.

*Williams, Jilek, Lafferty & Gallagher Co., L.P.A., Martin W. Williams* and *Peter O. DeClark*, for appellants.

*Robinson, Curphey & O'Connell* and *E. Thomas Maguire*, for appellee.

EVANS, Judge.

This is an appeal by the plaintiffs, Aaron C. Blodgett and his parents, Karen and Stephen Blodgett ("appellants"), from a judgment of the Court of Common Pleas of Hancock County directing a verdict in favor of defendant Lima Memorial Hospital on plaintiffs' complaint against it for the alleged malpractice of certain nurses.

On January 7, 1986, at approximately 6:15 p.m., Karen Blodgett arrived at Lima Memorial Hospital with her husband, Stephen. Karen, approximately twenty-six weeks pregnant with her first child, believed at that time that she was experiencing labor contractions. Dr. James L. Kahn, the obstetrician on call, examined Karen at approximately 8:50 p.m. and advised her that, although the contractions had ceased and her cervix was not dilated, he thought she might be in premature labor. He ordered an intravenous drip of magnesium sulfate to be administered to Karen to delay or prevent the continuation or onset of contractions of the uterus. A short time later, since Lima Memorial was not equipped to manage the care of infants born at such an early stage of gestation as twenty-six weeks, Dr. Kahn ordered Karen transferred to Toledo Hospital in Toledo, Ohio, approximately ninety miles from Lima. The doctor and nurses then arranged for the transfer, and the ambulance called by the nurses arrived at Lima Memorial at approximately 9:40 p.m. The record reflects that Karen was put on the ambulance between 10:00 and 10:15 p.m., and that the ambulance then left Lima Memorial Hospital at 10:37 p.m. A labor and delivery nurse, Polly Kirian, accompanied Karen in the ambulance. Kirian had been called in from her home by the nurses who arranged the transfer, at the request of Dr. Kahn.

When the ambulance had traveled approximately half the distance between Lima and Toledo, Nurse Kirian examined Karen vaginally, as she had just experienced rupture of the amniotic sac. Finding that Karen's cervix was dilated approximately six centimeters, and that the baby's head and fist were visibly

emerging, the nurse, believing that the baby's birth was imminent, made a decision to divert the ambulance to nearby Blanchard Valley Hospital. At approximately 12:55 a.m., the hospital's obstetrician on call delivered Aaron Blodgett, immediately entrusting him to the care of Robert Beck, the pediatrician called to attend the delivery of the child, which was accomplished without complications. Dr. Beck promptly intubated the child, estimated to be approximately twenty-six to twenty-eight weeks gestational age, and began delivery of oxygen to his lungs. A neonatal transport team from Toledo Hospital, which had been summoned by the physician[1] upon Karen Blodgett's arrival at Blanchard Valley Hospital, arrived and assumed the care of the newborn child at approximately 1:35 a.m. Transport of the mother and child to Toledo took place shortly thereafter.

For the next four months Aaron was a patient at Toledo Hospital, where he was subjected to treatment for various conditions resulting from his premature birth.[2] He was released from the hospital to his parents' care on May 4, 1986. In the years since, his parents have given him constant care, as he is blind and profoundly mentally retarded, with no verbal or locomotive abilities, except for the ability to roll over and to use some primitive communicative gestures.

The Blodgetts filed a lawsuit in their own and Aaron's behalf against various defendants, contending that Aaron's mental retardation was caused by the medical malpractice of the hospitals and physicians and nurses who were involved in the care of Karen and the birth and care of Aaron Blodgett. Specifically, the plaintiffs alleged that the child became brain-damaged as a result of improper resuscitation at Blanchard Valley Hospital, and that an undue delay by the doctor and obstetrical nurses at Lima Memorial in initiating Karen's transport to Toledo caused the birth to occur before the ambulance could reach Toledo. The case was voluntarily dismissed by the plaintiffs, and refiled on July 2, 1993. As of the trial date of June 14, 1995, all the defendants had been dismissed from the action except Lima Memorial Hospital, the appellee herein.

Following a jury trial, at the close of all the evidence, appellee moved for a directed verdict on the issues of standard of care and causation. The trial court granted appellee's motion, on the basis that the plaintiffs failed to present expert opinion in support of their claim that the Lima Memorial Hospital nurses had committed malpractice through their breach of a standard of care for maternal

---

1. Neither Blanchard Valley Hospital nor Lima Memorial had the resources or equipment to serve the needs of a neonate born as prematurely as Aaron Blodgett.

2. In addition to prolonged ventilation assistance, Aaron received surgeries for correction of a heart defect, for bilateral inguinal hernia repairs, for correction of a bowel obstruction, and for treatment of retinal detachment in both eyes.

transport, that is, the trial court found that the plaintiffs had failed to prove negligence. The Blodgetts have appealed the court's judgment, asserting the following two assignments of error:

"I. The trial court erred in granting a directed verdict because substantial, competent expert testimony, upon which reasonable minds could differ, was introduced into evidence in this case.

"II. Alternatively, the trial court erred in granting a directed verdict because expert testimony is not necessary to establish the standard of care imposed upon the nurses in this case."

For the following reasons, we overrule the assignments of error and affirm the judgment of the trial court.

The appellants, with only Lima Memorial Hospital left in the case as a defendant, asserted at trial that, because of the obstetrical nurses' "delay" in preparing Karen Blodgett for transfer to Toledo, Aaron was born not at a hospital fully equipped to care for a grossly premature neonate, but at Blanchard Valley Hospital where he was unable to be properly cared for at birth. The only evidence offered by appellants to support their theory that there was such a delay was the testimony of Dr. Thomas Harris, an Arizona physician specializing only in neonatology, a subspecialty of pediatrics. Dr. Harris testified that, although there was no standard of care in Ohio to follow when arranging a maternal transport, the fifty-seven-minute time interval between the arrival of the ambulance at Lima Memorial and its departure for Toledo would be considered excessive anywhere in the country, in his opinion. He further opined that, had Aaron been born at Toledo Hospital, he would have had a better "chance of being normal." Dr. Kahn, the transferring physician, and the two obstetrical nurses who arranged the transfer testified as to the tasks and procedures which had to be accomplished in the time they spent preparing the patient for transfer, and that there were no standards of medical or nursing practice which had been breached. Appellee also presented the testimony of three expert witness at trial who asserted that Aaron's physical and mental deficits in all probability resulted from a brain malformation which occurred at a critical time in his development in utero, and as a result of his extremely premature birth.

Following a comprehensive review of the record in this case, we must agree with the trial court's conclusion that the plaintiffs simply failed to present a case of physician or nurse malpractice regarding the care and treatment of Karen and the premature birth of her son. Therefore, even viewing the evidence at trial in a light most favorable to the plaintiffs, reasonable minds could come to only the conclusion that a verdict should have been rendered in favor of appellee. See *Bruni v. Tatsumi* (1976), 46 Ohio St.2d 127, 131–132, 75 O.O.2d 184, 186–187, 346 N.E.2d 673, 677–678, and *Ramage v. Cent. Ohio Emergency Serv., Inc.* (1992), 64

Ohio St.3d 97, 102–104, 592 N.E.2d 828, 832–834 (expert testimony must be presented to establish standard of care and breach of that standard, and proximate cause must be established, to avoid directed verdict);  see, also, *Barbee v. Finerty* (1995), 100 Ohio App.3d 466, 470–472, 654 N.E.2d 364, 366–368;  Civ.R. 50(A)(4).

Therefore, having found no error prejudicial to the appellants herein in the particulars assigned and argued, we overrule the assignments of error and affirm the judgment of the trial court.

*Judgment affirmed.*

SHAW and THOMAS F. BRYANT, JJ., concur.